IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

YU LIN,                                    )
                                           )
                Plaintiff,                 )              4:05CV3153
                                           )
        v.                                 )
                                           )
UNIVERSITY OF NEBRASKA,                    )         MEMORANDUM AND ORDER
                                           )
                Defendant.                 )
————————————————                           )

        This matter is before the court on defendant's motion for summary judgment (Filing

No. 50), plaintiff's Objection to Defendant's Motion for Summary Judgment (Filing No. 54),

plaintiff's Motion for Summary Judgment (Filing No. 70), and plaintiff's sealed motion (Filing

No. 63).  Plaintiff has asserted claims for discrimination in education and employment under

Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act, 42

U.S.C. §§ 2000 *et seq* and the state law claims of defamation and negligence.

        The court has carefully reviewed the pleadings, the briefs, and the evidentiary

materials filed by the parties and finds as follows.

## FACTUAL BACKGROUND

        Plaintiff Yu Lin has been enrolled as a graduate student with the defendant

University of Nebraska-Lincoln (University) since the fall semester of the 1998-1999 school

year.  Defendant is a part of the University of Nebraska.  Ms. Lin has completed her most

recent graduate course work primarily in the Department of Computer Science and

Engineering (CSE).  Students are admitted to the CSE PhD program on a provisional basis

until they pass qualifying examinations.  Students are expected to take and pass the

qualifying examinations in not more than two attempts over three semesters after

admission.  The qualifying exams contain three subject matter tracks.  Each track test is administered by an area committee.  The student's test papers are graded independently by two members of the area committee.  Thereafter, the area committee converts the numerical scores into a grade of fail, pass, or high pass.

To successfully pass the exams and continue in the PhD program, students are expected to obtain a minimum grade of two passes on two tracks and one high pass on the third track.  The University explains that if a student is unable to meet this standard, they are dismissed from the program unless they make a successful appeal to the CSE Graduate Committee or the University Graduate Council.

Lin took her first set of CSE qualifying exams in the Fall of 2003.  Lin took  tests in three Tracks, Theory, Systems, and Applications.  During the Systems track examination Lin requested scratch paper from the proctor and was told there was no scratch paper.  Ten minutes later a male student also requested scratch paper and after this request, the proctor, Dr. Jun Wang, left the room and returned with scratch paper which he gave to both students.   Lin contends that she was only given scratch paper because she put her foot out to prevent the proctor from delivering paper to the male student.

Lin received the following results on her Fall 2003 qualifying exams: Theory Track - Pass; Systems Track - Fail; and Applications Track - Pass.  On December 4, 2003, Lin received a letter from Dr. Sharad C. Seth, Graduate Committee Chair, advising her of these scores and informing her that because she did not receive the requisite score of two passes and a high pass she would need to attempt the qualifying examinations one more time and score a pass in the Systems Track examination and at least one high pass.

2

Lin took her second set of CSE qualifying examinations in the Spring of 2004.  Lin took tests in the Systems Track and Artificial Intelligence Track and received the following scores: Systems Track - Fail, Applications Track - High Pass.  In a letter dated April 28, 2004, Dr. Seth informed Lin that because she had not received the requisite two passes and a high pass in two attempts at the qualifying examinations within three semester of her provisional admission, he would recommend that she be discontinued from the program. The letter informed Lin that she had the right to appeal the decision in writing within one week.  Lin appealed the decision but was informed in a letter dated May 11, 2004 that the Graduate Committee had decided to uphold its earlier decision and therefore she would no longer be able to retain her status as a graduate student in Computer Science and Engineering starting in the Summer of 2004.  Lin states that in an initial draft of her letter appealing the decision she described the November 19, 2003 incident where she was not immediately given scratch paper as discriminatory, but removed this information from the letter after Dr. Henninger, a faculty member who reviewed the letter, advised her to do so. Because of Lin's termination from the program, the University did not grant her applications for teaching assistant positions for the Summer of 2004 and the Fall of 2004

Two other male students also did not obtain the requisite two passes and one high pass after taking the CSE qualifying examinations twice in three semesters.  These students took examinations in different Tracks than Lin.  Both students were readmitted to the program after appealing their dismissal.   One of these students took qualifying examinations in the area of Engineering.  The university contends that the qualifying examinations for students in the Engineering Ph.D. program contain entirely different questions then those found in the CSE Ph.D. qualifying examinations, and that the

3

Engineering and CSE qualifying examinations are designed to test a students knowledge on different subject matter tracks.

A letter dated May 24, 2004 from Dr. Ellen Weissinger, Executive Associate Dean of Graduate Studies, informed Lin that due to her dismissal from the program the University administratively dropped her preregistration for Fall of 2004 and a block was placed on her registrations beginning with Summer of 2004. This letter also informed Lin that she had the right to appeal the CSE termination decision to the UNL Graduate Council and that the appeal must be in writing within 30 days following the receipt of the letter. On June 23, 2004, Lin field an appeal of the termination of her CSE doctoral program with the Graduate Council. The Graduate Council met on September 9, 2004 and upheld Lin's appeal. Lin was informed that she was provisionally reinstated into the Computer Science doctoral program on September 15, 2004 and that the University would allow her to take the CSE qualifying examinations one more time before December 15, 2005. Lin was formally readmitted to the CSE doctoral program on September 29, 2004. Lin received a High Pass on the CSE Systems Track qualifying examination during the Spring Semester of 2005.

After Lin was removed from the CSE doctoral program in May, she applied and was admitted to the PhD program in educational studies on July 7, 2004. In a letter dated July 16, 2004 Lin was told that after the Graduate Council made a decision on Lin's appeal in September, that if Lin was readmitted to the CSE department she could be enrolled in both programs. However, in the September 15, 2004 letter the Graduate Council informed Lin she could not actually attend both programs and Lin choose to resume her studies in the CSE program.

4

After Lin was admitted to the PhD program in educational studies, Lin was awarded a research assistant position with the University's Libraries Digital Initiatives and Special Collections for the period of February 1, 2005 trough May 31, 2005.  In a letter dated April 26, 2005 from Nancy Busch, Associate Dean of Libraries, Lin was offered the opportunity to continue her graduate assistant position with the University's Libraries Digital initiatives and Special Collections office.  The letter directed her to sign the letter and return it to Ms. Busch no later than April 29, 2005.  In an Affidavit filed with this court Ms. Busch says she never received a signed copy of the letter.  Therefore, another letter dated July 8, 2005 was sent to Lin offering her the same research assistant position beginning August 1, 2005 through May 31, 2005.  The letter directed Lin to sign and return the later no later than July 15, 2005 in order to accept the research assistant position.  She never signed and returned the letter.  Ms. Busch states it was assumed she had declined the position.  Lin states that she signed the April 26, 2005 letter and returned it to Janet Medcalf, an employee with the University's Libraries, and that is the reason she did not sign the July 8, 2005 letter.  Lin attached a sign copy of the April 26, 2005 letter to her complaint filed with this court.  (Filing No. 18).

Lin filed her first internal complaint with the University's Office of Equity, Access and Diversity Programs on June 28, 2004.  In this complaint Lin claimed that the proctor at the Systems track exam discriminated against her based on her sex by failing to provide her with scratch paper.  Lin filed a second complaint with this department on October 27, 2004.  In this complaint, Lin claimed that the CSE department retaliated against her for her by dismissing her from the program in May 2004.  Lin also filed a charge of discrimination with the United States Department of Education Office of Civil Rights on January 23, 2006 and

5

with the Equal Employment Opportunity Commission on March 10, 2005. The EEOC dismissed the charges filed with that agency in a letter dated May 31, 2005 concluding that Lin was not an employee. The Office of Equity, Access and Diversity Programs investigated Lin's claims and determined that they were not actionable. The Office of Civil Rights closed Lin's file informing her that she can refile within 60 days following the termination of these court proceedings. Lin filed her civil complaint with this Court on June 29, 2005.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if

6

any," which it believes demonstrates the absence of a genuine issue of material fact. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997). Accordingly, a party moving for summary judgment must "set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the movnig party to judgment as a matter of law." NECivR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting Fed. R. Civ. P. 56(e)).  A nonmoving party may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998).  In this respect, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts;' . . . [i]t must show there is sufficient evidence to support a jury verdict in [its] favor." *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  Accordingly, the nonmoving party must "include in its brief a concise response to the moving party's statement of material facts.  The response shall address each numbered paragraph in the movant's statement, and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony . . . "  NECivR 56.1(b).

## DISCUSSION[1]

**TITLE IX CLAIMS**

Plaintiff's first, third, and fourth claims allege discrimination and retaliation in the area of education.

Title IX, provides that "[n]o person ... shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX thus prohibits gender discrimination against students enrolled in federally supported educational programs and has been construed to provide an implied cause of action to an aggrieved individual. *See Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir.1995). Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims. *See id.; see also Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 832 (10th Cir.1993) (Title VII is "the most appropriate analogue when defining Title IX's substantive standards") (quoting *Mabry v. State Bd. of Community Colleges*, 813 F.2d 311, 316 n. 6 (10th Cir.1987)). Under this familiar three-step inquiry, a plaintiff must first establish a prima facie case. A prima facie case of discrimination requires the plaintiff to establish that he or she 1) was excluded from participation in , or denied the benefits of, or subjected to discrimination in an educational program; 2) that the program receives federal assistance;

_____

[1] The Court is taking its description of the plaintiff's claims from the Rule 26 planning report filed by the parties on October 17, 2005. (Filing No. 22). In plaintiff's Motion for Summary Judgment (Filing No. 70) she raises for the first time a claim of disparate impact under Title VII. This claim was never raised with the EEOC or any other administrative agency and was not mentioned in plaintiff's complaint with this court. This claim cannot be raised for the first time in plaintiff's motion for summary judgment and will not be considered by the court.

and 3) that the exclusion form the program was on the basis of sex.  *Seamons v.  Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).  The creation of a prima facie case gives rise to the presumption that the challenged action was the result of unlawful discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, (1993).  In order to rebut this presumption, the defendant bears the burden of articulating a facially nondiscriminatory reason for the adverse action.  *See Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 143 (2000).

### 1.    Discrimination - Dismissal from CSE Doctoral Program

Plaintiff's first claim alleges that the University discriminated against her by dismissing her from the CSE PhD program after her unsuccessful appeal from her dismissal for failing to satisfy the program exam requirements.  Specifically, plaintiff claims that she was not readmitted on appeal while two similarly situated males were readmitted after dismissal for failing to satisfy the exam requirements.[2]  Defendant argues that it dismissed plaintiff from the program because she did not meet the testing requirements and her academic performance did not warrant readmission on appeal.  Defendant seeks summary judgment on this issue.

From the record presented by the parties, it is the court's understanding that upon plaintiff's second appeal to the Graduate Council she was readmitted to the CSE PhD

---

[2] The similarly situated males include Mr.  012 and Mr.  212, these are the students who failed to satisfy the exam requirements and were readmitted to the program after a successful appeal of the dismissal.  In her later filings with the court plaintiff begins to challenge the academic records of other students but she did not claim in her initial filings that these additional students were similarly situated and the court declines to find they were.  Therefore for purposes of her prima facie case the court is considering the readmittance of Mr. 012 and Mr. 212.

9

program, and has taken the Systems Track exam and received a high pass and is currently moving forward in the PhD program.  Therefore, it is not clear whether the plaintiff has suffered any legally actionable adverse action as a result of the denial of her first appeal. Plaintiff was not excluded from participation in, or denied the benefits of the CSE PhD program.  Therefore, the court is taking this issue under advisement and reserving its ruling on this issue to allow the parties to provide the court with additional argument on the issue of adverse action.  The parties shall brief the issue pursuant to the schedule laid out in the Order portion of this Memorandum and Order.

### 2.    Discrimination - Failure to Investigate Complaints

Plaintiff claims that the University discriminated against her by failing to investigate the complaints she made against the CSE department and faculty.  Defendant defined this as a Title VII issue and argues that plaintiff did not exhaust her administrative remedies with the EEOC.  But a review of plaintiff's complaints to the University's Office of Equity, Access & Diversity Programs reveals that she complained of experiencing discrimination in her educational program so the court will review this claim under Title IX.  Defendant seeks summary judgment on this claim.

Plaintiff has failed to establish a prima facie case of discrimination.  The affidavit of Alicia Santos, Director of Equal Employment and Investigations in the Office of Equity, Access & Diversity Programs states that she did indeed investigate plaintiff's complaint and determined that she had not been treated differently because of her sex.  Ms. Santos did not respond to the EEOC charge because she had learned that the EEOC was going to administratively dismiss this charge.  It is within the University's discretion to determine that a complaint is without merit.  Plaintiff has now challenged this decision by filing this civil

10

case. Therefore, because the complaint was reviewed and determined to be without merit plaintiff has failed to establish that any discrimination occurred. The court will grant summary judgment in favor of defendant on this claim.

   **3.   Retailitation**

   Plaintiff claims that defendant retaliated against her for her complaint that the exam proctor in the Systems Track Exam discriminated against her by not providing her with scratch paper. Defendant alleges that the University did not retaliate against plaintiff and that her allegations of retailitation are post-hoc in nature. Defendant seeks summary judgment on this claim.

   "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005). To establish retaliation the plaintiff must prove that she engaged in protected activity and that she suffered an adverse educational action as a result of that activity. *Brine v. University of Iowa*, 90 F.3d 271, 273 (8th Cir. 1996).

   Here plaintiff has failed to establish an essential element of the retaliation claim, that she engaged in protected conduct. Prior to her dismissal from the CSE doctoral program plaintiff did not make a complaint of discrimination. She may have considered making her complaint in her letter of appeal but she did not. Therefore, because she did not engage in protected activity prior to the University dismissing her from the PhD program she has failed to establish a claim of retailitation and summary judgment is granted in favor of

11

defendant.  When plaintiff did make her complaint of discrimination known to the Graduate Council in her second appeal, plaintiff did not suffer an adverse action, rather she was readmitted to the graduate program.  Therefore, plaintiff has failed to establish an essential element of her claim of Retailitation.  Summary Judgment is granted in favor of the defendant.

## B.    TITLE VII

Plaintiff's second claim alleges a violation of Title VII.  Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).  Summary judgment may be entered in a Title VII action "if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial."  *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999).

## Prima Facie Case

A prima facie case of discrimination requires the plaintiff to establish that he 1) is a member of a protected class; 2) was qualified to perform her job; 3) suffered an adverse employment action; and 4) was treated differently than similarly situated people. *See Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (*citing Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)).  If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for its action.  *St. Mary's Honor Center*, 509 U.S. at 509.  If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff

12

to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves,* 530 U.S. at 143. The ultimate burden of persuasion remains with the plaintiff throughout the case. *Id.*

      **1.     Discrimination - Dismissal of Assistant Teaching Position**

Plaintiff claims that defendant discriminated against her by dismissing her application for a teaching assistantship for the Summer of 2004 and Fall of 2004. Specifically, plaintiff claims that other similarly situated males were readmitted to the CSE PhD program after failing to satisfy the exam requirements and these males were afforded the opportunity to apply for, and were in some instances awarded, teaching assistant positions. Defendant claims that the dismissal of plaintiff's application was not discriminatory and was the result of her dismissal from the CSE PhD program which was based on her academic performance.[3] Defendant seeks summary judgment on this issue.

It is the court's understanding that after her admission to the doctoral program in the Department of Education on July 7, 2004, plaintiff was eligible to apply for teaching assistant positions. Therefore, it is questionable whether plaintiff suffered an adverse employment action. The court is taking this issue under advisement and the parties shall brief the issue of whether the plaintiff suffered an adverse employment action pursuant to the briefing schedule set forth in the Order portion of this Memorandum and Order.

**C.     State Law Claims**

----

[3]Defendant also argues that plaintiff's claim was not timely because it was not filed with the EEOC within the requisite 300 day. The court concludes that Plaintiff had 300 days from May 24, 2004 to file her EEOC complaint and therefore made a timely charge with the EEOC.

Plaintiff's remaining claims are governed by state common law. Plaintiff claims that she was defamed by a member of the Graduate Studies department; that a faculty member was negligent in creating an exam question that could not be answered; and that employees in the University's Library Department were negligent in the handling of her letter mailed to the University's library staff. Defendant seeks summary judgment on these claims.

The State Tort Claims Act provides the proper remedy for tort suits against the state and employees of the state. Neb. Rev. Stat. § 81-8-229. The Act provides that no suit can be brought in district court "unless the State Claims Board has made final disposition of the claim." Neb. Rev. Stat. § 81-8,213. Final disposition occurs either when the claims board decides the claim or when the claim is withdrawn. *See id.* After a party has followed the proper procedure to bring a tort claim against the state, "[s]uits shall be brought in the district court of the county in which the act or omission complained of occurred or, if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County." Neb. Rev. Stat. § 81-8,214 Moreover, the Act has exempted certain claims from the state's waiver of sovereign immunity and therefore does not apply to "(4) [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Neb. Rev. Sat. § 81-8, 219 (4).

Therefore, here, plaintiff's claim for defamation is not cognizable under the State's Torts Claim Act and is therefore barred by sovereign immunity under Nebraska state law. Furthermore, plaintiff has not complied with the requirements of the State Torts Claim Act

14

in bringing her remaining two negligence claims.  Summary judgment is granted in favor of the defendant on these claims.

IT IS ORDERED:

1.      Defendant's motion for Summary Judgment (Filing No. 50) is granted in part and denied in part.  The motion is granted with respect to the following claims: (1) plaintiff's fourth claim of discrimination based on the University's failure to investigate her claim; (2) plaintiff's third claim of Retailitation; (3) plaintiff's fifth claim of defamation; (4) plaintiff's sixth claim of negligence in preparation of the exam question; and (5) plaintiff's seventh claim of negligence in handling her letter of employment.

2.      The court is taking under advisement plaintiff's first claim of discrimination under Titles IX based on her dismissal from the program, and plaintiff's second claim of discrimination under Title VII based on her inability to apply for teaching assistant positions. The parties shall file their supplemental briefs by April 21, 2006 and shall have until  May 5, 2006 to reply to the opposing parties brief.

3.      Plaintiff's Motion for summary judgment (Filing No. 70) is denied.

4.      Plaintiff's sealed motion (Filing No. 63) does not require action by this court.

DATED this 31st day of March, 2006.

                                        BY THE COURT:


                                        S/ F. A. Gossett
                                        United States Magistrate Judge


15